(C. D. 357)

M. GRUMBACHER *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 17, 1940)

*James W. Bevans* for the plaintiff.

*Webster J. Oliver,* Assistant Attorney General (*Daniel G. McGrath,* special attorney), for the defendant.

Before CLINE, EVANS, and KEEFE, Judges

CLINE, Judge: This is a suit against the United States in which the plaintiff protests against the action of the collector of customs in refusing to release for delivery certain imported brush handles. The record shows that of February 16, 1939, the plaintiff, through his attorney, wrote a letter to the collector requesting delivery of a case of merchandise, and that on March 2, 1939, the collector answered the plaintiff's letter and notified him of his refusal to deliver the goods unless they were marked in a conspicuous place where the marking is not likely to be defaced, destroyed, removed, covered, obscured, or obliterated by treatment made of the articles before they reach the ultimate consumer. The instant protest was filed on March 8, 1939, which is within the statutory time to file a protest against a decision of the collector excluding any merchandise from delivery.

The merchandise arrived on January 27, 1939, and the estimated duty was paid on February 1. The marking of the articles is governed by the provisions of section 304 of the Tariff Act of 1930

as amended by section 3 of the Customs Administrative Act of 1938, the pertinent parts of which read as follows:

SEC. 304. MARKING OF IMPORTED ARTICLES AND CONTAINERS.

(a) MARKING OF ARTICLES.—Except as hereinafter provided, every article of foreign origin (or its container, as provided in subsection (b) hereof) imported into the United States shall be marked in a conspicuous place as legibly, indelibly, and permanently as the nature of the article (or container) will permit in such manner as to indicate to an ultimate purchaser in the United States the English name of the country of origin of the article. The Secretary of the Treasury may by regulations—

(1) Determine the character of words and phrases or abbreviations thereof which shall be acceptable as indicating the country of origin and prescribe any reasonable method of marking, whether by printing, stenciling, stamping, branding, labeling, or by any other reasonable method, and a conspicuous place on the article (or container) where the marking shall appear;

(2) Require the addition of any other words or symbols which may be appropriate to prevent deception or mistake as to the origin of the article or as to the origin of any other article with which such imported article is usually combined subsequent to importation but before delivery to an ultimate purchaser;

\*　　\*　　\*　　\*　　\*　　\*　　\*

At the trial the plaintiff introduced no oral testimony but offered all the papers in the case including specifically the report of the appraiser in red ink on page 2 of the invoice, the form entitled "Notice That Goods Must be Redelivered or Legally Marked," the request on the part of the importer's attorney for delivery of the merchandise, the collector's answer to that request, and the memorandum transmitted with the protest by the acting solicitor. The appraiser's notation on the invoice which the plaintiff incorporated in the record reads:

Coll: Brush Handles marked "JAPAN" in manner that would be hidden after Ferrules are attached. Not legally marked.

The note on the form entitled "Notice That Goods Must be Redelivered or Legally Marked" is substantially the same as the notation made by the appraiser on the invoice. In the letter in which counsel for the importer requested the collector for permission to withdraw the articles, the facts and reasons are set forth as follows:

On February 3, 1939, a notice was issued to the effect that the marking of the name "Japan" was not acceptable because it did not appear on the handles where it would not be covered when these handles were used in the manufacture of brushes in the United States.

It is our opinion that the handles were properly marked at the time of importation, namely, they were legibly and indelibly marked with the name "Japan"; that such marking would be permanent as long as the handles were sold in commerce in the condition in which imported; and that there is no requirement in the marking statute that the country of origin be so positioned as to be visible when the imported material is used in the United States in the manufacture or production of a new article with a new name, character, or use.

Therefore, we request delivery of Case No. 2785.

The assistant collector answered the plaintiff's request for delivery of the merchandise, and, after reciting the plaintiff's claim, stated the following reasons for refusing the claim:

Your attention is invited to article 528 (e) of the Customs Regulations of 1937 is amended by T. D. 49658. It is herein provided that articles subject to marking to indicate the country of origin should be marked on the integral part in a reasonably conspicuous place where the marking is not likely to be defaced, destroyed, removed, covered, obscured or obliterated by the treatment or use made of the article before it reaches the ultimate purchaser.

We do not believe that these articles are legally marked, and therefore cannot release them in the condition as imported, unless compliance is had with the provisions of the above mentioned section 304.

The acting solicitor's letter gives substantially the same information that is found in the assistant collector's letter above quoted.

Counsel for the defendant offered no objection to the incorporation of the documents above described, the agreement of counsel amounting to a stipulation that the facts stated therein are correct.

The merchandise is invoiced as "Black Polished Handles (wood) for Artist Brushes," and the question involved is whether the marking "JAPAN" on the brush handles in a position where the lettering would be covered by ferrules when the handles are manufactured into brushes is such a marking as is contemplated by the statute.

Article 528 (e) of the Customs Regulations of 1937, as amended in T. D., 49658, reads:

Articles (or containers) shall be marked in a place where the mark can be easily read upon a casual examination of the article (or container). Articles (or containers) subject to marking to indicate the country of origin should be marked on an integral part in a reasonably conspicuous place where the marking is not likely to be defaced, destroyed, removed, altered, covered, obscured, or obliterated by the treatment or use made of the article (or container) before it reaches the ultimate purchaser.

The entire controversy arises over the construction of the meaning of the words "ultimate purchaser" in the regulation and in the statute. In the case of *Gibson-Thomsen Co.* v. *United States*, 2 Cust. Ct. 172, 179, C. D. 117, the court defined the statutory provision as follows:

We are of opinion that the words "ultimate purchaser in the United States" used in the statute mean "ultimate purchaser of the imported article." An article loses its identity as soon as a new and different article is made therefrom and the ultimate purchaser of the new article is not the ultimate purchaser of the imported material within the tariff sense.

In that case tooth brush handles and wood brush blocks were marked on the portion of the articles where the bristles would be inserted when the articles were manufactured into brushes, and the court held that the marking was sufficient to indicate the name of the country of origin to the brush manufacturer who was the ultimate purchaser of the imported articles. On appeal, the decision of the

trial court was affirmed. *United States* v. *Gibson-Thomsen Co., Inc.,* C. A. D. 98. The court said:

It is clear from the record that the involved articles are not such as are "usually combined" in the United States with other articles, within the purview of section 304 (a) (2), *supra*, but, on the contrary, are so processed in the United States that each loses its identity in a tariff sense and becomes an integral part of a new article having a new name, character, and use. We are of opinion, therefore, that, at the time of their importation, the involved articles were marked "in such manner as to indicate to" the "ultimate purchaser in the United States"—the manufacturer of tooth brushes and hair brushes—the country of their origin—Japan.

The merchandise in this case was imported prior to the decision of the court in *Gibson-Thomsen Co.* v. *United States, supra,* and the collector followed the same practice with respect to the marking that the Government claimed to be proper in that case.

In harmony with the decisions cited, we find that the involved articles in this case were marked so as to indicate to an ultimate purchaser in the United States the name of the country of origin, and we hold that the goods were legally marked at the time of importation. Judgment will be entered in favor of the plaintiff.